# Plymouth *versus* Jackson.

Land was surveyed, and laid off and appropriated by proprietors for the religious, literary, and charitable uses of the inhabitants of Plymouth township, in which it lay; and afterwards an act of Assembly was passed authorizing the owners of land within the township to elect officers; who, when duly elected, were to constitute a body corporate, by the name of the "*Proprietors of Plymouth;*" and providing that the interests in all lands and in all debts or demands, which shall belong to the proprietors of the township of Plymouth, be vested in the corporation, for the use of the proprietors. Previous to the act of incorporation, the township of Plymouth was formed for *municipal purposes;* and *subsequent* to the act, the township of *Jackson* was formed also for municipal purposes; both of the same being formed by the court, partly out of land lying within the old township of Plymouth, and partly of land *without* its boundaries. Afterwards, by act of Assembly, the taxable inhabitants of Jackson township were authorized to elect officers; who, when elected, were incorporated by the name of "The Trustees of the Township of Jackson;" and it was provided that "all the rights, interests, and claims, real and personal, and all debts, dues, and demands whatsoever, either in the original fund of the proprietors of Plymouth or otherwise, which shall belong to any or all the inhabitants of the township of Jackson, shall vest in said corporation, and be recoverable in their name by action at law, as in other cases."

*Held,* that the Legislature is incompetent to dispose of and divert the property of a charitable corporation; that the property in question belonged to the proprietors of Plymouth township, who were incorporated for educational purposes, and not as a municipality; that the fund was the property of the incorporated proprietors of Plymouth, and could not be divested by the legislature; that the erection of the townships of Plymouth and Jackson, for *municipal purposes,* did not affect the rights of the proprietors of Plymouth; and that though the division of Plymouth did not take from the proprietors, whose residence fell into Jackson, any of their corporate rights, yet they must be exercised only under the original act of incorporation.


ERROR to the Common Pleas of *Luzerne county.*

This was an amicable action on the case, between the trustees of the township of Jackson and the trustees of the township of Plymouth. The object of the proceeding was to ascertain and settle the rights of the parties in the school-fund belonging to certified Plymouth. The fund arose from the proceeds of sales of certain lots of land in the township of Plymouth, (one of the seventeen townships of Luzerne county,) which were surveyed and laid

off by the original Connecticut proprietors of the said township, and appropriated to the religious, literary, and charitable uses of the said township. For a number of years, committees were annually appointed by the resident proprietors of the township. The commissioners, appointed under the act offering compensation to Pennsylvania claimants, passed the 4th April, 1799, and its supplements, issued *certificates* to the committees, for the time being, for the said lots, in trust *for the use of the proprietors* of said township; and the committees from time to time sold and conveyed, and let upon long leases, a great part of the said lots, reserving rents for the use of the proprietors. As the committees were not vested with the legal title, and the rents having increased, an act of Assembly was passed on the 2d April, 1831, (*Acts* 367, &c.,) confirming the sales, &c., and authorizing the inhabitants of the township of Plymouth, *being owners of land within the same*, and all who shall hereafter inhabit *and own land* within the said township, to elect a treasurer, secretary, and three persons as trustees; and those persons, when duly elected, shall constitute a body corporate and politic, by the name of "The Proprietors of Plymouth;" and, by the fifth section, the interests in all lands, and in all debts or demands, which shall belong to the proprietors of the certified township of Plymouth, or which were vested in the committees for the use of the proprietors, shall vest in the corporation.

*The township of Plymouth* was established by the court of Luzerne county, *previous to the year* 1800, and included as well *the old certified township of Plymouth* as other land *without* the bounds of such certified township.

The township of Jackson was formed out of the said established township of Plymouth, by the court of Luzerne county, on the 18th of January, 1845, and is composed of *a portion* of the old certified township of Plymouth, with a small part of land lying *without* the bounds of such certified township. The *proprietors and owners* of land within the said old certified township were divided at the time of laying out *Jackson* township, leaving one portion residing in Plymouth and another portion in Jackson. *A portion of the land from the sales of which the funds in dispute were raised, lay in what is now Jackson township, and the other portion in Plymouth.*

By an act passed 10th April, 1848, (*Acts* 480,) the taxable inhabitants of the township of Jackson, being owners of land within the same, and all who shall hereafter inhabit and own land within the said township, were authorized to meet and elect a treasurer, secretary, and three trustees, for the township, and when duly elected, these officers were to constitute a body corporate and politic, by the name of "The trustees of the proprietors of the township of Jackson." And it was further enacted, that immediately upon the passage of this act, the rights, interests, and claims, real and personal, and all debts, dues, and demands whatsoever, either in the

original fund of the proprietors of Plymouth, or otherwise, which shall belong to any or all the inhabitants of the township of Jackson, shall vest in said corporation, by virtue of this act, and be recoverable in their name, by action at law, as in other cases.

Sec. 8. That the Court of Common Pleas of Luzerne county be invested with jurisdiction to hear and determine, either by suit at law, as in other cases, by case stated, or by the direction of an issue, all disputes and difficulties between the proprietors of the township of Jackson and the proprietors of Plymouth, in relation to the division and disposition of the fund in the hands of the proprietors of Plymouth, and thereupon to give judgment, as shall be just : *Provided*, That either party shall be permitted to take a writ of error to the Supreme Court, in the same manner as in other cases of judgment upon verdict : *And Provided*, That the costs shall abide the event in all such suits or proceedings.

A case was stated in the nature of a special verdict, either party to have liberty to take a writ of error; the submission being made merely to try the question whether the proprietors and owners of land, residing within that part of *old certified Plymouth, now included within the bounds of Jackson township*, and represented in this suit by the plaintiffs, have been cut off, by the establishment of said Jackson township, from being members of the corporation represented by the defendants, and from any right to any portion of the funds or interests therein, as being distributed for purposes of education, and now in the hands of the defendants.

The said funds consist of bonds and mortgages, drawing interest, and devoted to the purposes of education, and all the proceeds of certain lands, *originally reserved in the old certified township of Plymouth*, (one of the seventeen townships of Luzerne county,) *for educational purposes*, and lying within the same.

The said lands, many years ago, (previous to the year 1830,) at the instance of the proprietors of said Plymouth, were sold, and the proceeds invested as aforesaid, but the said sales were legalized and confirmed by the act of 2d April, 1831, hereinafter particularly referred to.

The said act of 2d April, 1831, incorporating the defendants, (*Pam. Laws* 367,) *prout the same*, and the act of 10th April, 1848, (*Pam. Laws* 480,) *prout the same*, incorporating the plaintiffs, are both made part of this case.

Under the facts submitted, if the court be of opinion that the inhabitants, proprietors, and owners of land within that part of said township of Jackson formerly included within the bounds of certified Plymouth, have, by the establishment of Jackson township as aforesaid, been exscinded and cut off from the incorporation represented by the defendants, and, from that time, in the distribution of said funds, and the interest accruing thereon for the purposes of schools, not entitled to receive any portion of the same; then,

[Plymouth *v.* Jackson.]

judgment to be entered in favor of the defendants. If the court think otherwise, then judgment to be entered for the plaintiffs, &c.

JESSUP, J., expressed the opinion, that the right to the fund vested in the inhabitants being owners of land in a territory known as certified Plymouth. The vesting of that right had no relation to any political or municipal corporation. An erection of new townships would not alter the lines of certified Plymouth, and could not affect the rights of those who, living within the newly erected townships, were corporators in the corporation, as land-owners in certified Plymouth. In case of a division, it would be immaterial which party retained the old name. The assumption of the new name would not divest old rights. That the working of the corporation did not depend upon the boundaries of the township of Plymouth, as erected by the Court of Quarter Sessions. He therefore held that the erection of the township of Jackson, by the Court of Quarter Sessions, in no way affected the rights of the inhabitants of certified Plymouth, holding lands within Jackson, to vote at the corporation election for trustees, and to participate as fully in the benefits of the fund as if that township had not been erected. The act of incorporation prescribed who are to be corporators, and no by-law of the corporation could enlarge or restrict the number, or change the qualifications. The landholders residing in the certified township, whether of larger or smaller lots, are each entitled to the privileges and immunities of corporators, and none others can be admitted *without legislative provision.*

But he also said, "that the legislature have the power to amend the act of incorporation of the 2d April, 1831, can, I think, admit of no doubt; that they may modify or change the power of the trustees, and appoint another mode of administering the fund, not taking it away from its original intention, or depriving the land-owners of their rights of equal participation in its benefits, may be shown by the every-day acts of legislation, and in relation to which no doubt exists. The cases in which such regulations are prescribed are of constant occurrence, and the very act, incorporating the defendants, and vesting in them the rights certified to the committees and held in trust for the proprietors, is an instance of the exercise of that power.

" Of the best mode of administering this trust, the legislature are the proper judges. They have erected the land-owners of Jackson township into a corporation, similar in every essential particular to that of Plymouth, and for the very purpose of taking care of, and disbursing that portion of the fund, which of right belongs to the land-owners in Jackson. Instead of one board of trustees, as heretofore, two are to be elected. The fund is a charity—and is to be properly divided among *all* those entitled to its benefits.

" By a political division of the township, it will be exceedingly difficult for those residing in one township to attend the elections in the other. Jealousies might be supposed to arise, and a variety

[Plymouth *v.* Jackson.]

of impediments be thrown in the way of a fair and impartial distribution of the fund. This seems to have been contemplated by the legislature, when passing the act of 10th April, 1848. The seventh section vests, immediately upon the passage of the act, ' all the rights,' in the original fund of the 'Proprietors of Plymouth, which shall belong to any or all the inhabitants of the township of Jackson,' in the corporation thereby erected.

" The eighth section authorizes this court to determine the rights of the parties therein, in any of the modes pointed out.

" The question being settled that the corporators residing in Jackson, by the erection of that township, lost none of their rights, the legislature having the same power to consolidate these rights in a corporation, that they had to grant the original charter to Plymouth; it follows, that the ' trustees of Jackson' have become the legal representatives of these rights, and may properly claim of the trustees of Plymouth their proper share of the fund, held by them for the common benefit, and which they for convenience administer according to its original destination.

" Did not the case stated preclude the consideration of the mode of division, it would seem reasonably clear that the only proper division would be according to the number of proprietors in each township. The tenure by which the right of election is held would seem to constitute the only basis. The source from which the fund was derived would seem not to be material. Each one entitled to vote in the election of officers seems to be equally entitled to the benefits of the fund, which he thus has power to control. But this last point is a reserved question, not now necessary to be disposed of. The judgment upon the case stated must be *for the plaintiff*."

It was assigned for error :—

The court erred in rendering judgment for the plaintiffs on the case stated.

1st. " That the legislature may modify and change the power of the trustees, and appoint another mode of administering the fund," and that it had the power "to erect the land-owners of Jackson township into a corporation similar in every essential particular to that of Plymouth," &c.

2. That "the fund is a charity," (and therefore) "is to be properly divided among *all* those entitled to its benefits."

3. That the act of 10th April, 1848, vested in the proprietors of Jackson, "all the rights" in the original fund of the proprietors of Plymouth, and that "it follows that the trustees of Jackson have become the legal representatives of these rights, and may properly claim of the trustees of Plymouth their proper share of the fund held by them for the common benefit, and which they for convenience administer according to its original destination."

[Plymouth *v.* Jackson.]

The case was argued by *H. B. Wright*, for plaintiffs in error.

The creation of a new corporation, the proprietors of land in Jackson, thus giving the seceders a part of the old fund, was an ex-parte proceeding, and void in law : Brown *v.* Hummel, 6 *Barr* 86.

In the case at bar, the legislature cuts the fund in two, and erects a new corporation upon the dismembered fragments of the old one.

There are residents and landholders, even in *municipal* Plymouth, who have no right to participate in this fund, because they are not *within its certified lines:* within the lines of Jackson, whether certified or not, all claim to participate.　See section 6th, of act of 10th April, 1848, *Pam. Laws* 480.

This is a violation of the original trust.

It is not denied but the landholders in *certified* Plymouth, now within the municipal lines of Jackson, may participate in the fund : but not in the way proposed by the act of 10th April, 1848.　They cannot take away any part of it.

The judge below assumed that, if the question of the division of the fund had been submitted, he would have had no difficulty in adapting a scale to its necessities.

The resident landholders in each, he would let in for an equal share.　Now, although landholders must be trustees, still the fund is for common-school purposes—all the children share in the benefits of the school, whether their fathers are resident landholders or not.　Plymouth is a heavy mining district, and densely populated—Jackson, altogether agricultural.　Such a rule would operate oppressively.

*H. Wright*, and *Nicholson*, for defendants in error.

The division of municipal Plymouth, by the court, in nowise affected the corporation of the proprietors' trustees, established by act of 1831.

Apart from this question, the legislature had the controlling power over this charity for educational objects : if it was considered important for the better management of the fund, and attaining its original object, they might divide ; they might submit its control to different classes of officers, or trustees, provided they did not divert it from its original purpose.

This was an original reservation, not a grant or devise to a corporation.　When the legislature, in 1831, undertook to place its control under a corporation, they might have divided it between two, or they might have provided for the case of setting off new townships.　What is there to prevent this now, the fund being kept to its original use ?　The legislature "may exercise an equity jurisdiction of a remedial character, a kind of mixed power ; partly legislative, partly judicial."　"It may act in the character of an appellate tribunal of justice :" 2 *W. & Ser.* 278.　This is the

[Plymouth v. Jackson.]

same power a court of chancery would have, for the better administering a charity. Our legislature authorizes partitions ; sales of estates of minors and orphans ; sales by trustees and by married women ; confirms such sales ; can divide townships, boroughs, counties, and their funds. In Ludlow *v.* Sikes, 18 *Pick.* 317, where a township had been divided, the statute gave the new a portion of the school and ministerial lands, &c., which had been set apart by the original proprietors.

The opinion of the court was delivered July 15, by

GIBSON, C. J.—Neither Jackson, as a municipality, nor, Plymouth, as such, is entitled to any part of the fund in contest. The proprietors of Plymouth, within its bounds in 1831, were incorporated by statute, not for municipal, but for educational purposes ; and they, or their successors, residing within its original bounds, are corporators at this day, participant in the corporate franchise, and entitled to elect or be elected, though they may have been shifted by the division into Jackson. With a township afterwards erected for municipal purposes, or a corporation created for educational purposes, they, as original corporators, have never had to do.

It was not Plymouth township that was incorporated. The proprietors within it, not the inhabitants of it as a municipality, became a body politic. From inattention to this, sprang the fallacious notion entertained by the inhabitants of Jackson and the legislature, that there must be a new corporation as appendant to the new township. However the boundaries of Plymouth may have been altered for municipal purposes, the boundaries of it for educational purposes remained the same. Township authority, or corporate assistance, was unnecessary to, and had nothing to do with the functions of the incorporated proprietors. The fund was produced, not by an application of the township taxes, but by the bounty of the proprietors. The corporators had no connection with the township, and did not necessarily or naturally require to be assimilated to its changes. In derogation of this principle, the inhabitants of the new township, some of them not within the ancient limits of Plymouth, and consequently not entitled to the benefit of the fund, procured an act of Assembly to divide the corporation, and vest a part of its property in the proprietors of Jackson, incorporated for the purpose of receiving it.

It requires no more than a glance at the Dartmouth College case, decided by the Supreme Court of the United States, to see that the legislature is incompetent to dispose of the property of a charitable corporation.

The fund is the property of the incorporated proprietors of Plymouth, and there is no authority under the constitution to divest it.

The division of Plymouth took from the proprietors whose resi-

dence fell into Jackson, none of their corporate rights; but they can be exercised only under the original act of incorporation.

Judgment reversed, and judgment rendered on the case stated for the defendants below.